UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NAZMI HAVOLLI,

Plaintiff,

v.

2909 OCEAN AVE OWNERS CORP.,

Defendant.

**MEMORANDUM DECISION AND ORDER**

26-cv-1240 (BMC)

**COGAN**, District Judge.

Plaintiff was the live-in superintendent for a 54-unit cooperative property ("co-op") owned by defendant. He filed suit alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Defendant filed three counterclaims sounding in fraud, and plaintiff has moved to dismiss them. For the reasons below, plaintiff's motion is denied.

## BACKGROUND

### I. Summary of Complaint

About 25 years ago, plaintiff was hired to work as the live-in superintendent for the 54-unit co-op located at 2909 Ocean Avenue in Brooklyn, New York. His general duties included cleaning, repairing, and maintaining the building and its fixtures. Plaintiff's schedule was nominally split into two "shifts" – from 8:00 am to 12:00 pm, then 8:00 pm to 11:00pm – but he was, in reality, expected to be available 24 hours per day, 7 days per week. During that time, plaintiff received about $1,200 per month and lived in the building rent free.

Fifteen years ago, defendant purchased the property and kept plaintiff as the superintendent. Plaintiff's general duties and work schedule remained essentially the same, but his monthly compensation was reduced to $439 per month. Plaintiff filed suit under the FLSA

and NYLL alleging, *inter alia*, that for the past six years (*i.e.*, the time period not barred by the statute of limitations under the New York Labor Law), defendant failed to pay him minimum wage and overtime.

## II. Summary of Answer and Counterclaims

Defendant denies any wrongdoing. Plaintiff serves as the building's live-in superintendent and his compensation package includes a monthly cash stipend, a rent-free apartment without utility costs, two parking spaces, three storage units, and workers' compensation and disability insurance coverage. When quantified as a monetary value, plaintiff's compensation for the relevant time period exceeded $3,600 per month. Thus, says defendant, plaintiff was paid everything he was owed.

Recently, a new board of directors assumed management of the co-op and undertook a review of the building's operations, vendors, and finances. That review revealed that plaintiff had a long history of double-billing and personal profiteering at the co-op's expense. According to defendant, plaintiff operated at least one private handyman business. The co-op discovered several thousand dollars' worth of checks issued to his business, paying for work that fell squarely within plaintiff's duties. For example, in plaintiff's complaint, he describes one of his duties as "remove old and install [new] radiator valves," but the co-op discovered that it had issued checks to plaintiff's business for $250 with "change main valve of radiator" in the memo line. The new co-op board concluded that such payments should not have been made because plaintiff was already compensated for the work, and new board implemented financial controls targeting this "double-dipping scheme." Defendant alleges that plaintiff has filed this suit in retaliation.

Based on the above conduct, defendant asserts three counterclaims, which are all essentially repackaged versions of the same cause of action. Defendant contends plaintiff

unjustly enriched himself (Counterclaim 1) by committing fraud (Counterclaim 2) and, in doing so, breached his duty of loyalty (Counterclaim 3).[1] The bottom line is that defendant seeks to (1) negate plaintiff's entitlement to unpaid wages, if any, and (2) recoup as damages (a) plaintiff's compensation and (b) the fraudulent double-payments.

## DISCUSSION

Plaintiff has moved to dismiss all of defendant's counterclaims for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). His theory is that, because defendant's counterclaims are permissive (*i.e.*, not compulsory), the Court needs an independent basis to exercise jurisdiction. And, because the counterclaims arise exclusively under state law, no such basis exists. Plaintiff argues in the alternative that defendant fails to state a claim. See Fed. R. Civ. P. 12(b)(6). Plaintiff is wrong on all fronts.

## I. Legal Standard

### A. Rule 12(b)(1)

"A [counterclaim] is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotations marks and citation omitted). The Second Circuit has "held it to be an abuse of discretion for [a] district court to exercise supplemental jurisdiction over purely state-law claims." Cohen v. Postal Holdings, LLC, 873 F.3d 394, 405 (2d Cir. 2017).

---

[1] Defendant's counterclaims are titled "Unjust Enrichment / Disgorgement under the Faithless Servant Doctrine"; "Fraud / Unjust Enrichment – Double Billing and Unauthorized Charges"; and "Breach of Duty of Loyalty." However, the factual allegations underlying the first and third counterclaim are virtually the same, and overlap significantly with the second counterclaim, except that the second counterclaim alleges specific fraudulent transactions. For the ease of reading, the Court refers to the first counterclaim as the "faithless servant counterclaim"; the second counterclaim as the "fraud counterclaim"; and the third counterclaim as the "duty of loyalty counterclaim."

On the other hand, "[i]f a counterclaim is compulsory, the federal court will have [supplemental] jurisdiction over it even though ordinarily it would be a matter for a state court." Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974); see also GMA Accessories, Inc. v. Idea Nuova, Inc., 157 F. Supp. 2d 234, 239 (S.D.N.Y. 2000) ("A compulsory counterclaim need not have an independent basis of federal jurisdiction." (citing Harris v. Steinem, 571 F.2d 119, 122 (2d Cir. 1978))).

"Thus, whether an independent jurisdictional basis must exist in order for the Court to adjudicate defendant's counterclaims turns on the nature – compulsory or permissive – of those claims." D'Jamoos v. Griffith, 368 F. Supp. 2d 200, 203-04 (E.D.N.Y. 2005). This question turns on whether "there is a 'logical relationship' between the counterclaim and the main claim." Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004) (citations omitted). Such a relationship exists if the claim and counterclaim arise "out of the same transaction or occurrence," but need not have "absolute[ly] identic[al] factual backgrounds." Id.

**B. Rule 12(b)(6)**

"A court evaluates a motion to dismiss a counterclaim under [Rule] 12(b)(6), using the same standard as a motion to dismiss a complaint." Qunbin Yuan v. AA Forest, Inc., No. 20-cv-5484, 2026 WL 1734658, at *1 (E.D.N.Y. June 16, 2026). The Court "accepts all facts alleged in a counterclaim as true and construes all reasonable inferences in the counterclaim-plaintiff's favor." Iacovacci v. Brevet Holdings, LLC, 437 F. Supp. 3d 367, 374 (S.D.N.Y. 2020) (citing ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009)). "To survive a motion to dismiss, the court must find the counterclaim rests on factual allegations that 'raise a right to relief above the speculative level.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A court presented with a motion to dismiss

under both Rule 12(b)(1) and Rule 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." Id.

## II. Analysis

### A. Subject Matter Jurisdiction

District courts in the Second Circuit "have come to different conclusions on whether a court can properly exercise subject matter jurisdiction over an employer's claims in an action alleging FLSA or NYLL violations." Eliav v. Millennium Prods. Grp., LLC, 857 F. App'x 699, 701 (2d Cir. 2021); compare, e.g., Johnson v. Corp. Express, Inc., No. 20-cv-4627, 2022 WL 992633, at *10 (E.D.N.Y. Mar. 31, 2022) (dismissing "counterclaims for faithless servant and unjust enrichment" because the "counterclaims are permissive and not compulsory") with Markbreiter v. Barry L. Feinberg, M.D., P.C., No. 09-cv-5573, 2010 WL 334887, at *1-2 (S.D.N.Y. Jan. 29, 2010) (concluding that the "counterclaims based on the faithless servant doctrine . . . are compulsory and that no independent basis of jurisdiction is required").

These differing conclusions do not stem from competing interpretations of the law, however. Whether an employer's counterclaim bears a logical relationship to a plaintiff's wage-and-hour claim turns on whether the predicate conduct was taken in the course of performing the plaintiff's employment duties. Compare, e.g., Stefanovic v. Old Heidelberg Corp., No. 18-cv-2093, 2019 WL 3745657, at *2 (S.D.N.Y. Aug. 8, 2019) (finding a logical relationship) with Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 467 (S.D.N.Y. 2008) (finding no logical relationship).

In Stefanovic, the plaintiffs were restaurant servers who brought FLSA wage claims, and the defendant brought faithless servant counterclaims based on the plaintiffs having unjustly enriched themselves by altering the tips on customers' receipts. 2019 WL 3745657, at *2. The

court found a logical relationship between the claims and counterclaims because the plaintiffs were "faithless" in performing their duties, *i.e.*, processing payments by customers. Id. ("[A] faithless servant forfeits the right to compensation for services tainted by their faithlessness").

In contrast, in Torres, the plaintiffs were grocery store managers who brought FLSA claims for unpaid overtime, and the defendant brought faithless servant claims based on, *inter alia*, workplace sexual harassment. Although the "faithless" misconduct occurred while the plaintiffs were employed (and on the clock), the Court found no logical relationship between the claims and counterclaims because it was inconceivable that the misconduct was undertaken in the course of performing their managerial duties. In other words, "[t]he only possible connection between [the] overtime claims and the counterclaims is that they arise out of the same employer-employee relationship." Torres, 628 F. Supp. 2d at 467.

Here, there is a logical relationship between plaintiff's FLSA claims and defendant's counterclaims. As in Stefanovic, 2019 WL 3745657, at *2, all of the conduct underlying the counterclaims is alleged to have taken in the course of performing his duties: he enriched himself by fraudulently billing defendant for services for which defendant had already compensated him (with, *inter alia*, a cash stipend and a rent-free apartment). If true, plaintiff's services might be "tainted by [his] faithlessness," id., or fraud, such that "presentation of [plaintiff's] claim that certain compensation was wrongfully withheld will necessarily bring before the Court the facts underlying [defendant's] state law counterclaims regarding [plaintiff's] purported disloyalty," Miller v. Levi & Korsinsky, LLP, No. 20-cv-1390, 2021 WL 535599, at *4 (S.D.N.Y. Feb. 12, 2021). Thus, defendant's "counterclaim is compulsory, [and] the [Court has] jurisdiction over it even though ordinarily it would be a matter for a state court." Baker, 417 U.S. at 469 n.1.

### B. Failure to State a Claim

#### i. Faithless Servant and Duty-of-Loyalty

Although defendant's first (faithless servant) and third (duty of loyalty) counterclaims are nominally distinct, the Second Circuit has recognized that these claims are "essentially the same." Yukos Cap. S.A.R.L. v. Feldman, 977 F.3d 216, 242 (2d Cir. 2020). A generic duty-of-loyalty claim requires the employer to establish (1) the existence and (2) breach of such a duty and (3) resulting damages. See Hilb Grp. of N.Y., LLC v. Associated Agencies, Inc., No. 22-cv-04131, 2026 WL 836282, at *12 (E.D.N.Y. Mar. 26, 2026). For a faithless servant version of the claim, the only germane difference is that the employee's "compensation may satisfy the 'damage' element[.]" Yukos, 977 F.3d at 242.[2]

Defendant has adequately alleged plaintiff's duty of loyalty. "Under New York law, an employee owes a duty of good faith and loyalty to his employer." Design Strategies, Inc. v. Davis, 384 F. Supp. 2d 649, 659 (S.D.N.Y. 2005), aff'd, 469 F.3d 284 (2d Cir. 2006). Plaintiff does not contest that defendant was his employer, thereby establishing plaintiff's duty of loyalty to defendant.[3]

Defendant has adequately alleged a breach of that duty. To allege such a breach, an employer must identify "misconduct and unfaithfulness [that] substantially violate[s] the contract

---

[2] For this reason, the counterclaims are not duplicitous. "Where a claimant is entitled to a particular category of damages on one claim but not the other, the claims are not duplicative." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) ("Two claims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.'" (quoting Sitar v. Sitar, 50 A.D.3d 667, 670, 854 N.Y.S.2d 536, 538 (2d Dep't 2008)).

[3] Ironically, one of defendant's affirmative defenses is that, under the "economic realities test," see Felder v. United States Tennis Ass'n, 27 F.4th 834, 844 n.8 (2d Cir. 2022), plaintiff was not an employee, but rather an independent contractor (and thus not subject to the FLSA and NYLL). If that's legally correct, the faithless servant counterclaim would likely fail; courts have found that "the faithless servant doctrine" does not "extend [to] independent contractors," even those that "owe a duty of loyalty to [the] defendant." Fed. Ins. Co. v. Mertz, No. 12-cv-1597, 2015 WL 5769945, at *5 (S.D.N.Y. Sept. 29, 2015) ("To decide otherwise would risk expanding the damages recoverable in an ordinary duty of loyalty case to include all compensation received by the breaching party.").

of service." Carco Grp., Inc. v. Maconachy, 383 F. App'x 73, 76 (2d Cir. 2010) (quoting Turner v. Konwenhoven, 100 N.Y. 115, 2 N.E. 637, 639 (1885)).[4] "[C]ourts have routinely held that a [duty of loyalty or faithless servant] claim may be premised on allegations that an employee stole money from [his] employer or improperly used corporate assets for [his] personal benefit." Robinson v. De Niro, 739 F. Supp. 3d 33, 127 (S.D.N.Y. 2023) (collecting cases).

As discussed in more depth below, defendant alleges, with notable specificity, a kind of systemic misconduct that is paradigmatic of an employee's "substantial[] violat[ion] [of] the contract of service," and thus a breach of the duty of loyalty. Carco Grp., 383 F. App'x at 76-77 (defendant having altered "over one hundred weekly reports" constituted "substantial" disloyalty); Phansalkar, 344 F.3d at 202 (employee's disloyalty was "substantial" because it was not "limited to a single, isolated incident, but rather occurred repeatedly, in nearly every transaction on which he worked.").

Finally, defendant has adequately alleged the final element for both claims, *i.e.*, "compensation" for the faithless servant claim, and "damages" for the duty-of-loyalty claim. Both parties allege that defendant paid plaintiff a certain amount of cash per month, which obviously suffices as "compensation" for the faithless servant claim. The parties further each allege that defendant paid invoices issued by plaintiff, but dispute the nature of those payments. Assuming the factual truth of the counterclaim (*i.e.*, that the payments were part of a double-billing scheme), defendant has adequately alleged "damages" for the duty-of-loyalty claim.

---

[4] Another standard for the faithless servant counterclaim is alleging that the employee "act adversely to his employer in any part of a transaction, or omit to disclose any interest which would naturally influence his conduct in dealing with the subject of his employment." Carco Grp., 383 F. App'x at 76 (quoting Murray v. Beard, 102 N.Y. 505, 7 N.E. 553 (1886)). "Despite the differing standards, 'New York courts have not reconciled any differences between them, or defined the circumstances, if any, in which one standard should apply rather than the other.'" Miller, 2021 WL 535599, at *5 (quoting Phansalkar, 344 F.3d at 202)). Thus, because defendant satisfies the first, "substantial" standard, the Court need not consider the second, "adverse act" standard.

ii. Fraud

Defendant's fraud counterclaim alleges a double-billing scheme, *i.e.*, a scheme by which the same service or expense is billed more than once, or billed simultaneously to multiple parties, resulting in duplicate or inflated payment. See, e.g., United States v. Medical Therapy Sciences, Inc., 583 F.2d 36, 38 (1978) (discussing how a defendant's "fraud [] consisted of" "double billing the two companies for the same patients"); accord United States v. Lisa, 152 F. App'x 85, 86 (2d Cir. 2005) (defendant "pleaded guilty to a mail fraud conspiracy to double bill for medical services"). Defendant's theory is simple: plaintiff was compensated for working as a superintendent, but also billed defendant for that same work, thereby doubling his compensation.

This counterclaim is subject to a heightened pleading standard. See Fed. R. Civ. P. 9(b). To survive "under [Rule] 9(b)'s heightened pleading standard for fraud claims, [defendant] must '(1) specify the statements that the plaintiff contends were fraudulent[;] (2) identify the speaker[;] (3) state where and when the statements were made[;] and (4) explain why the statements were fraudulent.'" Superb Motors Inc. v. Deo, 776 F. Supp. 3d 21, 90 (E.D.N.Y. 2025) (quoting Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004)).

For Rule 9(b) purposes, defendant easily hurdles the first three requirements: defendant specified the statements that were fraudulent (the demands for payment via invoice); the speaker (plaintiff); and when and where the statements were made (by mail or wire on the dates listed on the invoice). Plaintiff "only seriously challenge[s] the final requirement – explaining why the statements were fraudulent." GEICO v. J Flexible Corp., No. 25-cv-6700, 2026 WL 743292, at *4 (E.D.N.Y. Mar. 17, 2026).

According to plaintiff, defendant "cannot possibly allege . . . fraud" based on how defendant "interpret[s] the memo lines" of "checks (totaling under $6,000)." Of course it can.

Defendant's allegations that the work described in the memo lines largely tracks plaintiff's work duties, for which defendant alleges that plaintiff was already compensated, explains how those payments were part of a double-billing scheme. In other words, defendant's interpretation of the memo lines "explain[s] why the [payments] were fraudulent." Superb Motors, 776 F. Supp. 3d at 90.

## CONCLUSION

Plaintiff's motion to dismiss defendant's counterclaims is denied.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
August 12, 2026